Timothy K. Conde (#10118)
timothy.conde@stoel.com
Jason B. McCammon (#12591)
jason.mccammon@stoel.com
Jordan C. Bledsoe (#15545)
jordan.bledsoe@stoel.com
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

*Attorneys for SnapRays, LLC dba SnapPower*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| SNAPRAYS, LLC dba SNAPPOWER,<br><br>Plaintiff,<br><br>v.<br><br>ONTEL PRODUCTS CORPORATION, a New Jersey corporation, AND ASHOK "CHUCK" KHUBANI, an individual residing in New Jersey,<br><br>Defendants. | **SECOND AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No.: 2:16-cv-01198-CW<br><br>Judge Clark Waddoups |

Plaintiff SnapRays, LLC dba SnapPower, by and through its counsel, alleges and complains against defendants Ontel Products Corporation and Ashok "Chuck" Khubani (collectively, the "Ontel Defendants") as follows:

## PARTIES

1.      Plaintiff SnapRays, LLC is a Utah limited liability company doing business as SnapPower ("SnapPower"), with its principal place of business in Utah County, Utah.

2.      Defendant Ontel Products Corporation ("Ontel") is a New Jersey corporation with its principal place of business in Essex County, New Jersey.

3.      Upon information and belief, defendant Ashok Khubani, who goes by the name of Chuck Khubani ("Mr. Khubani"), is the CEO of Ontel and a resident of Essex County, New Jersey.

## JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over this action pursuant to 25 U.S.C. § 1331 because a federal question exists and because, pursuant to 28 U.S.C. § 1338, this action involves claims under the Patent Act (35 U.S.C. § 271) and Lanham Act (15 U.S.C. § 1125).

5.      Upon information and belief, the Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  Plaintiff SnapPower is a citizen of Utah, defendant Ontel is a New Jersey corporation headquartered in New Jersey, and defendant Mr. Khubani is a resident of New Jersey.

6.      Upon information and belief, the Court has personal jurisdiction over the Ontel Defendants because they have advertised, sold, and/or offered for sale products to Utah customers that infringe SnapPower's patents.  SnapPower is aware that the Ontel Defendants have offered their infringing products for sale in retail stores in Utah.

7.      Upon information and belief, the Court also has personal jurisdiction over the Ontel Defendants because they have committed acts of false advertising and unfair competition in this district, including by airing television commercials of their products on national television networks, which were seen in this district.

8.     Upon information and belief, venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 because the Ontel Defendants have committed acts of patent infringement and/or false advertising in this district and because the Ontel Defendants are subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

**SnapPower's products**

9.     SnapPower is the designer, manufacturer, marketer, and seller of original and high quality products at issue in this case:  the Guidelight, an electric outlet cover with built-in LED lighting and a light sensor; the SnapPower Charger, an electric outlet cover with a built-in USB charger; and the SwitchLight, a light switch cover with LED lighting similar to the Guidelight (collectively, the "Products" or "SnapPower's Products").  SnapPower's Products essentially transform electric outlets into night lights or chargers in a safe, sleek, easy-to-install manner, while leaving the electrical outlets free for use with other devices.

10.     The Products are directed at active electrical outlet covers with electrical loads that perform functions, such as LED lighting, light sensor, USB charger, speakers, and thermostats.  The Products accomplish all of these functions while not impeding access to the electric outlets themselves.

**SnapPower's patents**

11.     The technology used by SnapPower's Products has been recognized by the United States Patent and Trademark Office (USPTO) through the issuance of patent nos. 8,912,442; 6,087,588; 6,423,900; and 9,035,180 (collectively, the "Patents-in-Suit").

12.     SnapPower is the assignee and sole and exclusive owner of all right, title and interest in United States Patent No. 8,912,442  ("the '442 Patent"), entitled "Active Cover Plate."

The '442 Patent was duly and legally issued by the USPTO on December 16, 2014.  The named inventor of the '442 Patent is Jeremy Smith.  A copy of the '442 Patent is attached hereto as Exhibit A.

13.   SnapPower is the assignee and/or exclusive licensee of all right, title and interest in United States Patent No. 6,423,900 (the "'900 Patent"), entitled "Active Cover Plate for an Electrical Outlet."  The '900 Patent was duly and legally issued by the USPTO on July 23, 2002.  The named inventor of the '900 Patent is Jack Arbuthnott Soules.  A copy of the '900 Patent is attached hereto as Exhibit B.

14.   SnapPower is the assignee and/or exclusive licensee of all right, title and interest in United States Patent No. 6,087,588 (the "'588 Patent"), entitled "Active Cover Plate for an Electrical Outlet."  The '588 Patent was duly and legally issued by the USPTO on July 11, 2000.  The named inventor of the '588 Patent is Jack Arbuthnott Soules.  A copy of the '588 Patent is attached hereto as Exhibit C.

15.   SnapPower is the assignee and the sole and exclusive owner of all right, title and interest in United States Patent No. 9,035,180 ("the '180 Patent"), entitled "Active Cover Plates."  The '180 Patent was duly and legally issued by the USPTO on May 19, 2015.  The named inventors of the '180 Patent are Jeremy Smith, Phil Dietz, Sean Watkins, Jan Finlinson, Martin Johnson, and Jeremy Willden.  A copy of the '180 Patent is attached hereto as Exhibit D.

**Ontel's advertisements**

16.   Ontel, which is a big player in what is known as the "direct-response" or "infomercial" industry and affiliated with and/or the originators of the "As Seen On TV" brand, recently created and broadcasted nationwide one minute, thirty-second-plus television commercials that unabashedly featured and offered for sale the original SnapPower Guidelight,

using actual Guidelights they purchased from SnapPower in the video footage.  The commercials were also displayed on the specific websites created to sell the products.

17.     Ontel has dubbed its knock-off product the "Night Angel."  Despite these changes to the names of the product, there can be no doubt that the product actually being offered for sale in its commercial and on its website was the original Guidelight.  Indeed, the Ontel Defendants and/or their associates purchased Guidelights and SnapPower USB Chargers from SnapPower just months, if not weeks, before the website went live and the commercial was broadcast on television.

18.     The Ontel Defendants do not have the right to resell SnapPower's Products.  Instead, the Ontel Defendants purchased limited numbers of SnapPower's Products for use in their marketing and presumably to create knock-off products.  In other words, the Ontel Defendants were offering to sell products that are not their own, and they did not even have the advertised product to sell at the time they first advertised the product.

19.     Also troubling is that the Ontel-created website, www.buynightangel.com, featured images and photographs lifted directly from the SnapPower website.  Needless to say, SnapPower never authorized the use of its website, images, or video marketing to any third party, nor has SnapPower licensed or otherwise permitted Ontel to sell its products.

20.     In addition to misappropriating and infringing SnapPower's intellectual property rights, the Ontel Defendants falsely advertised that they had unique products to sell and deliver, when in fact it appears they had not made or sold anything.  Despite providing toll-free numbers and online ordering options to consumers, orders were not fulfilled or processed and, upon information and belief, no product was shipped in response to Ontel's false advertisements.

21.     In fact, at the or around the time of Ontel's advertisements, representatives of SnapPower and other third parties attempted to purchase each of the products offered for sale on Ontel's Night Angel website, but none of the credit cards entered for the purchases were processed and no product was shipped.

22.     Ontel—with the substantial assistance, guidance, and approval of its CEO—is knowingly and willfully engaging in a practice known as "testing the market," in which it rapidly creates television commercials and websites to determine whether sufficient sales can be generated to justify manufacturing and marketing a knock-off product.

23.     SnapPower has suffered and will continue to suffer irreparable harm and lost profits due to the Ontel Defendants' conduct, including damage to its goodwill and reputation, warranting immediate preliminary injunctive relief.

**Ontel's false advertising**

24.     Ontel is a marketer and distributor of numerous consumer products, including Miracle Copper Socks, Slushy Magic, the Foot Angel, and the Slap Chop.  Ontel markets its products through television commercials and a multitude of separate websites named after the individual products.  Ontel sells its products via telephone, online orders, and at various retail stores, including "big box" stores like Walmart.

25.     Ontel recently began aggressively marketing the Guidelight under the name Night Angel—using images and video footage of SnapPower's Guidelight—through a one minute thirty-second-plus commercial broadcast on national television and through a newly launched website, www.buynightangel.com, where the commercial is also displayed.

26.     Through the same website, Ontel is also offering for sale a product similar to the SnapPower USB Charger, which purports to have three USB ports for charging electric devices such as cell phones, tablets, and other similar products.

27.     Ontel is also offering to sell a light switch cover that purports to have LED lighting.

28.     Upon information and belief, Ontel is actively directing traffic to www.buynightangel.com and marketing its infringing Night Angel products by purchasing Google AdWords.

29.     Upon information and belief, Mr. Khubani is a moving and active force behind Ontel's purported Night Angel products, having reviewed, approved, and materially assisted in the advertising and associated misconduct.

30.     The Ontel commercial not only falsely advertises the Guidelight for sale, but it also has been substantially similar to and incorporated many features of the Guidelight marketing video prepared by SnapPower and displayed on its website.

31.     In addition, many of the images and photos that were published on the www.buynightangel.com website are similar or identical to those on SnapPower's website, or are "photoshopped" or altered versions of SnapPower's photographs and images.  The www.buynightangel.com website also utilized portions of the layout, design features, and text from the SnapPower website, including certain text that was copied verbatim and design features that were exactly the same as those on SnapPower's website.

32.     Parts of the commercial put out by Ontel also strongly resembled portions of the SnapPower video highlighting the Guidelight.

33.     Stated otherwise, the Ontel Defendants copied and created knock-off versions of SnapPower's websites and video marketing.

34.     Before creating their own alleged products and websites, and beginning roughly in September 2016, the Ontel Defendants and/or persons affiliated with them purchased numerous Guidelights and SnapPower USB Chargers from SnapPower, presumably for purposes of examining and copying the product, as well as using it in their internet and commercial advertising.

35.     For example, on August 29; September 2, 8 and 20; October 2, 11, 12, 24, and 28; and November 4, 2016, Ontel's CEO, Mr. Khubani, placed various orders for SnapPower products, including Guidelights and SnapPower USB Chargers.  These orders were all shipped to an Ontel employee, Lisa Siervo, at Ontel's business address.

36.     On September 6, 2016, an individual named Daniel Bora ordered a Guidelight, which was also shipped to Ms. Siervo at Ontel's business address.

37.     On October 2, 2016, an individual named Neil Khubani purchased five Guidelights.  Upon information and belief, Neil Khubani is affiliated with Ontel.

**Discovery of the Ontel commercial and resulting customer confusion**

38.     In early November 2016, SnapPower discovered that Ontel was running a commercial for the Night Angel, when an acquaintance and SnapPower customer alerted one of SnapPower's founders that he had seen a commercial for an "Angel Light" on ESPN.  At the same time or shortly thereafter, SnapPower discovered the www.buynightangel.com website.

39.     That same day, a relative of another SnapPower employee saw the Night Angel commercial on television twice.  He was confused as to whether the Night Angel was the

SnapPower Guidelight or whether SnapPower had partnered with someone else to sell the Guidelight.

40.     The customers who contacted SnapPower about the Night Angel were confused by the advertising for the alleged product, believing the product to be the Guidelight.

41.     Since that time, a potential customer expressed confusion as to the source of SnapPower's products on SnapPower's Facebook page.  The customer had attempted to purchase an outlet cover with LED lighting, but posted a complaint on the page when his purchase was unsuccessful, reporting that he was disappointed with the experience.

42.     Another customer posted a snapshot from the Night Angel website on the SnapPower Facebook page, inquiring whether the product depicted was a SnapPower product.

43.     On November 23, 2016, another individual sent an email to the SnapPower customer service department, asking why her order had not yet arrived.  She attached a copy of the order to her email.  The order clearly indicates that what she purchased was a Night Angel and a Night Angel USB charger.

44.     Confusion among consumers is highly likely to continue and increase.  Moreover, due to the poor customer service and inability to complete purchases on the Ontel website, SnapPower's reputation and goodwill, built up over years and through careful planning, will be tarnished and irreparably harmed if the Ontel Defendants are allowed to continue their knock-off strategy.

**Ontel's history and pattern of improper business practices**

45.     Ontel is a well-known marketer of "As Seen On TV" products.

46.     Because of their superior size, market penetration, and retail connections, the Ontel Defendants are able to quickly generate advertising and commercials to aggressively

market knock-off products.  If justified by their "test marketing," they are able to quickly manufacture knock-off products and get them into "big-box" stores.

47.     Upon information and belief, the Ontel Defendants specifically target potential competitors in an effort to eliminate them from the marketplace, thereby decreasing competition.

**SnapPower's products and marketing – the details**

48.     SnapPower is the developer, manufacturer, and distributor of the Guidelight, which it first began selling and shipping in May 2014.  SnapPower is a Utah company with approximately twenty employees.

49.     SnapPower successfully raised substantial startup funds through a Kickstarter campaign in 2014, and its products have been favorably reviewed, awarded prizes, displayed in numerous publications, and featured on various television programs, including the Today Show.

50.     The Guidelight is an outlet cover that provides LED lighting through three separate LED bulbs located on the bottom of the cover.  The Guidelight is used in place of a traditional outlet cover and functions as a "night light," providing light for comfort and safety:



51.     The LED lights are turned on and off automatically by a sensor located in the lower left quadrant of the Guidelight, as shown in the image immediately above.

52.     The Guidelight is easy to install and requires no wiring or batteries.

53.     SnapPower offers for sale two versions of the Guidelight, the "Duplex" and the "Decor."



Both the Duplex and the Decor versions of the Guidelight are offered in four different colors – white, light almond, ivory, and black.

54.     In addition to the Guidelight, SnapPower offers for sale the SnapPower Charger, which is an electric outlet cover with a built-in USB port that can be used to charge phones, tablets, and similar devices, and which comes in white, light almond, and ivory:



55.    SnapPower's SwitchLight is a light switch cover that provides LED lighting similar to the Guidelight.  In addition to selling the SwitchLight product through its website, SnapPower has shown the product at trade shows and has patent applications pending as to certain aspects of the product.

56.    SnapPower developed its unique website, www.snappower.com, for purposes of marketing and selling its devices.  SnapPower's website has copyright notices displayed on the bottom of each page.  The website has been registered for copyright protection effective as of February 7, 2017.

57.    SnapPower's website has a number of photographs, images, and text  that were prepared specifically for and belong to SnapPower.

58.    As just one an example, the homepage features a photograph of a lighted Guidelight at the bottom of a staircase in an otherwise dimly lit area.  The photograph was taken in the home of SnapPower's CEO, Jesse Leishman:



59.     SnapPower's website also includes a number of videos, one of which is a marketing video for the Guidelight.

60.     SnapPower has spent considerable resources and time developing its products and its marketing materials, including the www.snappower.com website, the videos, and print marketing.

**Ontel's knock-off products and marketing**

61.     Ontel is the owner and registrant of the domain name buynightangel.com, which was created on August 5, 2016.

62.     Ontel markets, offers for sale, and purportedly sells the Night Angel products, an outlet cover with a USB charger, an outlet cover with LED lighting, and a light switch cover with LED lighting.

63.     The Night Angel that Ontel initially advertised was or appeared to be identical to the Guidelight, such that Ontel was literally advertising (and manufacturing a duplicate of) the Guidelight for sale, i.e., *the same actual product* as SnapPower's Guidelight, although in some instances Ontel doctored the photographs so that the light sensor appears on the lower right corner of the outlet cover, rather than on the lower left corner, or so that the sensor did not appear at all.

64.     Upon information and belief, the photos of the purported Night Angel products are photos of the *actual* Guidelight.  The following are depictions of the purported Night Angel captured from the online video that appeared on the Night Angel website.  In these images, Ontel did not bother to change the side on which the light sensor is located:







65.     In another example of Ontel's blatant copying, the Night Angel lights, as with the Guidelights, are offered in "Duplex" and "Decor" styles:



66.     Ontel also directly lifted images from the SnapPower website and published them on the Night Angel website.  For instance, the photo taken inside the SnapPower CEO's home was doctored and reprinted as follows:



67.     The Night Angel website also incorporated an image from the SnapPower website, *with the exact same text* surrounding it:



68.     Another portion of the Night Angel website likewise incorporated text and layout features nearly identical to a portion of the SnapPower website, including the exact same text and numbers in grey circles. The SnapPower website image is as follows:



69.     The similar portion of the Night Angel website was as follows:



70.     Ontel also purports to sell an outlet plate with USB charger ports, similar but not identical to the SnapPower USB charger.



71.     However, the design offered by Ontel would be impossible to engineer and would not function as depicted.

72.     Accordingly, the images of the "Night Angel With USB Ports" were "photoshopped" or doctored images of SnapPower's product, and purported to offer a product for sale that literally does not exist.

73.     Ontel's website also offers a deluxe version of the Night Angel (the "Night Angel Deluxe") that purports to be 50% brighter and cover more area than the Night Angel light.  The deluxe version of the Night Angel is depicted as follows:



74.     Upon information and belief, Ontel's claim that the Night Angel Deluxe is 50% brighter is literally false.  The Night Angel Deluxe uses identical circuit boards and components and has identical serial numbers as the Night Angel.  The Night Angel Deluxe does not emit brighter light than the Night Angel.  Images comparing the Night Angel and Night Angel Deluxe are displayed below:



75.     In addition to offering the Night Angel, Night Angel Deluxe, and the Night Angel with USB ports, the Night Angel purports to offer a Night Angel "Switch Light," like SnapPower's SwitchLight.  The Night Angel Switch Light is depicted as follows:



**Litigation and regulatory action against Ontel**

76.     Ontel is no stranger to litigation and regulatory action, with multiple lawsuits having been filed against it around the country, starting as far back as the 1990s.

77.     Ontel has been subject to numerous lawsuits involving the knock-off business strategy, with fact patterns similar to those presented here, involving the poaching of products and intellectual property from their original creators without authority, attribution, or compensation.

78.     It appears that Ontel views regulatory actions and litigation as a routine cost of doing business, which they simply offset by large profit margins.

79.     Indeed, Ontel appears to be able to capitalize on the delays associated with litigation because, by the time a given case provides the injured manufacturer relief, Ontel has already profited handsomely from the knock-off strategy and their aggressive product sales and marketing, even accounting for the cost of litigation.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(FALSE ADVERTISING/FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125 OF THE LANHAM ACT AGAINST ONTEL)**

80.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

81.     Ontel has made materially false and misleading misrepresentations of fact in connection with the commercial advertising of its Night Angel products, including that the products were available for sale when they were not, that the advertised products were its own, that the products operate as advertised, and that the photographs of the products published on its websites and in its video and television marketing materials were its own photographs of its own products.

82.     Ontel's marketing and advertising is literally false because it offered SnapPower's products for sale without being in possession of such products and without yet having manufactured any competing product.

83.     Upon information and belief, Ontel's marketing and advertising is also literally false because it claims that the Night Angel Deluxe is 50% brighter than the Night Angel.  The Night Angel Deluxe uses identical circuit boards and components, uses identical serial numbers, and emits the same amount of light as the Night Angel.

84.     Ontel's marketing and advertising likewise conveys a materially false impression that is highly likely to confuse consumers.

85.     Ontel has made these misrepresentations in interstate commerce, including in television commercials and on the www.buynightangel.com website.

86.     Ontel's misrepresenations have caused and are likely to continue to cause both confusion as to the source and origin of the product and as to the characteristics of the product.

87.     SnapPower is suffering and is likely to continue to suffer both lost and diverted sales and harm to its goodwill, in which it has invested substantially and which it has worked over time to develop.

88.     SnapPower has suffered and will continue to suffer irreparable injury and damages as a result of the Ontel's conduct.

89.     SnapPower is entitled to recover its damages, Ontel's profits, and the costs of suit. Because of the willful nature of the Ontel's conduct and exceptional nature of this action, SnapPower is also entitled to enhanced damages and attorney's fees.

## SECOND CLAIM FOR RELIEF
## (UTAH UNFAIR PRACTICES UNDER UTAH CODE § 13-5-8 AGAINST DEFENDANTS)

90.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

91.     By, among other things, blatantly copying and advertising for sale SnapPower's products, which Ontel is not authorized or prepared to sell, Ontel has engaged in unfair methods of competition in commerce or trade.

92.     Ontel's conduct amounts to unfair and discriminatory conduct that destroys and prevents honest competition.

93.     Ontel has violated Section 13-5-8 of the Utah Unfair Practices Act by advertising for sale goods and merchandise that it was not prepared to supply.

94.     Due to his direct and indirect assistance to Ontel in violating the Utah Unfair Practices Act, Mr. Khubani is liable as a director, officer, and/or agent of Ontel under Utah Code § 13-5-6.

95.     As a result of the Ontel Defendants' conduct, SnapPower is entitled under Utah Code § 13-5-14 to immediate injunctive relief and damages, including but not limited to three times the amount of its actual damages, and court costs.

96.      SnapPower is entitled to attorney's fees and pre-and post-judgment interest as provided by law.

## THIRD CLAIM FOR RELIEF
## (UTAH UNFAIR COMPETITION UNDER UTAH COMMON LAW AGAINST ONTEL)

97.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

98.     Ontel is a competitor of SnapPower and has engaged in unfair competition under Utah common law.

99.     Ontel has intentionally engaged in unfair competition by engaging in business acts and practices in commerce that are unlawful, unfair, and fraudulent, including without limitation by falsely representing SnapPower's Products as its own and falsely representing it had product to sell when in fact it did not.

100.    Ontel's copying and advertising for sale SnapPower's products conveys a materially false impression that is highly likely to confuse consumers and that has actually confused SnapPower's customers.

101.    As a result of Ontel's conduct, SnapPower has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  SnapPower is entitled to immediate injunctive relief.

102.    SnapPower is also entitled to recover its damages as a result of Ontel's conduct.

**FOURTH CAUSE OF ACTION**
**(UNFAIR COMPETITION UNDER UTAH CODE § 13-5A-102(4) AGAINST ONTEL)**

103.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

104.    Ontel is a competitor of SnapPower and has engaged in unfair competition under Section 13-5a-102(4) of the Utah Unfair Competition Act.

105.    Ontel engaged in unfair competition by intentionally infringing the Patents-in-Suit.

106.    Ontel's acts and practices have led to a material diminution in value of SnapPower's Patents-in-Suit.

107.     As a direct and proximate result of Ontel's conduct, SnapPower is entitled to recover its actual damages in an amount to be proven at trial.

108.     SnapPower is also entitled to its costs and attorneys' fees, and pre- and post-judgment interest, as provided by law.

109.     SnapPower is entitled to punitive damages under Utah Code § 13-5a-103(1)(b)(iii) as a result of Ontel's intentional, deliberate, and malicious conduct.

**<u>FIFTH CAUSE OF ACTION</u>**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 8,912,442 AGAINST ONTEL)**

110.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

111.     Ontel is directly infringing at least Claims 1, 2, 3, 4, 5, 11, 12, 13, 14, and 15 of the '442 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

112.     At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '442 Patent.

113.     Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

114.     Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '442 Patent and SnapPower's rights therein.

115.     Ontel's infringement of the '442 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate

remedy at law.  SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

116.    As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

117.    Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

**SIXTH CAUSE OF ACTION**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 6,423,900 AGAINST ONTEL)**

118.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

119.    Ontel is directly infringing at least Claim 16 of the '900 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

120.    At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '900 Patent.

121.    Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

122.    Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '900 Patent and SnapPower's rights therein.

123.    Ontel's infringement of the '900 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate

remedy at law.  SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

124.    As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

125.    Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

## SEVENTH CAUSE OF ACTION
### (PATENT INFRINGEMENT OF U.S. PATENT NO. 6,087,588 AGAINST ONTEL)

126.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

127.    Ontel is directly infringing at least Claims 1, 2, 7, and 8 of the '588 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

128.    At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '588 Patent.

129.    Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

130.    Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '588 Patent and SnapPower's rights therein.

131.    Ontel's infringement of the '588 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate

remedy at law.  SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

132.   As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

133.   Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

## EIGHTH CAUSE OF ACTION
### (PATENT INFRINGEMENT OF U.S. PATENT NO. 9,035,180 AGAINST ONTEL)

134.   SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

135.   Ontel is directly infringing at least Claims 1, 2, 3, 5, 6, 7, 11, 12, 13, 14, 15, and 16 of the '180 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

136.   At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '180 Patent.

137.   Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

138.   Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '180 Patent and SnapPower's rights therein.

139.   Ontel's infringement of the '180 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate

remedy at law.  SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

140.     As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

141.     Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

## NINTH CAUSE OF ACTION
## (INJUNCTION – DEFENDANTS)

142.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

143.     The Ontel Defendants have violated SnapPower's rights and have otherwise acted in an unlawful manner, as set forth in the preceding causes of action.  SnapPower has a substantial likelihood of prevailing on the merits of these claims.

144.     Unless an injunction issues, SnapPower will suffer irreparable harm, including but not limited to permanent injury to its goodwill, ability to do business, and/or loss of business in an amount difficult or impossible to quantify.

145.     An injunction would not be adverse to the public interest.

146.     The threatened injury to SnapPower outweighs whatever damage an injunction could cause to the Ontel Defendants.

147.     There is a substantial likelihood that SnapPower will prevail on the merits of the claims for which injunctive relief is sought, or there are serious issues on the merits which should be the subject of further litigation.

148.     Therefore, under Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C.

§ 1116(a), SnapPower is entitled to a temporary restraining order and preliminary injunction that

includes, at a minimum, the following relief:

(a)     That Ontel be ordered immediately to discontinue infringing,

contributorily infringing, or inducing infringement of any Claims of the Patents-in-Suit,

literally or by equivalents;

(b)     That the Ontel Defendants be ordered immediately to discontinue making

any and all false and misleading statements in connection with their advertising and

marketing;

(c)     That the Ontel Defendants be ordered to cease offering for sale any

product they do not have, including any and all products offered or sold by SnapPower;

(d)     That the Ontel Defendants immediately cease and desist from marketing

and advertising for sale the Night Angel, including without limitation via television,

through the internet, or in print;

(e)     That the www.buynightangel.com website be immediately taken down and

discontinued;

(f)     That the Ontel Defendants are disgorged of and precluded from utilizing

the fraudulently obtained consumer information and market research; and

(g)     Any additional relief warranted at law or necessary to protect

SnapPower's rights, to be determined by the facts and circumstances at the time of entry

of the order.

## PRAYER FOR RELIEF

WHEREFORE, SnapPower respectfully requests the Court enter judgment against the Ontel Defendants as follows:

**On the First, Second, and Third Causes of Action:**

1.      For an order enjoining the Ontel Defendants, including all of their officers, agents, servants, employees, contractors, suppliers, and attorneys, and all other persons who are in active concert or participation with them or who receive actual notice of the order by personal service or otherwise, from engaging in false or misleading advertising with respect to SnapPower's products and related services, and/or violation the Lanham Act, unfair competition, or unfair practices, including, but not limited to, removal of all false or misleading advertisements;

2.      For an order requiring the Ontel Defendants to correct any erroneous impressions they have created in the minds of SnapPower's clients and the consuming public concerning the origin and characteristics of the Ontel Defendants' Products, including, but not limited to, the placement of corrective advertising and providing written notice to the public;

3.      Entry of judgment holding that the Ontel Defendants violated 15 U.S.C. § 1125(a) and unfair competition under Utah common law by unfairly competing against SnapPower by using false, deceptive, or misleading advertisements;

4.      For an award of damages that SnapPower sustained in consequence of the Ontel Defendants advertisement and conduct;

5.      For an award of the gains, profits, and advantages that the Ontel Defendants have obtained as a result of their actions in violation of 15 U.S.C. § 1125(a);

6.     Entry of judgment holding that the Ontel Defendants' actions and conduct were undertaken willfully and with the intention to cause confusion, mistake, or deception, making this an exceptional case, and awarding SnapPower enhanced damages and reasonable attorneys' fees; and

7.     For an order directing the Ontel Defendants to remove and destroy all misleading and deceptive materials pursuant to 15 U.S.C. § 1118.

**On the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action:**

1.     Declaring that Ontel has infringed one or more Patents-in-Suit;

2.     Preliminarily and permanently enjoining Ontel, including all of its officers, agents, servants, employees, contractors, suppliers, and attorneys, and all other persons who are in active concert or participation with it or who receive actual notice of the order by personal service or otherwise, from directly infringing, contributorily infringing, or inducing infringement of any Claims of the Patents-in-Suit, literally or by equivalents;

3.     Entry of judgment in favor of SnapPower and against Ontel awarding SnapPower its damages for patent infringement pursuant to 35 U.S.C. § 284 in an amount to be determined at trial, but in no event less than a reasonable royalty for infringement of the Patents-in-Suit, in addition to pre-judgment interest, post-judgment interest, and SnapPower's costs in bringing this action;

4.     For an award of treble damages pursuant to 35 U.S.C. § 284 due to Ontel's deliberate and willful infringement of the Patents-in-Suit;

5.     For an award of SnapPower's reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285; and

6.      For damages sufficient to compensate SnapPower for Ontel's wrongful conduct, including for SnapPower's lost profits, lost sales, Ontel's sales, and/or lost license fees and royalties.

<strong><u>DEMAND FOR JURY TRIAL</u></strong>

SnapPower demands a trial by jury on all matters herein so triable in accordance with Federal Rule of Civil Procedure 38(b).

DATED: May 22, 2017.               STOEL RIVES LLP

                                             */s/ Timothy K. Conde*

                                             Timothy K. Conde
                                             Jason B. McCammon
                                             Jordan C. Bledsoe

                                           *Attorneys for SnapRays, LLC dba SnapPower*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 22, 2017, a full and correct copy of the foregoing

**AMENDED COMPLAINT AND JURY DEMAND** was served upon counsel of record via

electronic filing.

/s/ *AnnMarie Liddell*