John S. Artz (admitted *pro hac* vice)
jartz@dickinsonwright.com
Franklin M. Smith (admitted *pro hac* vice)
fsmith@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
2600 W. Big Beaver Road., Suite 300
Troy, Michigan 48084
Telephone: (248) 433-7200

Jason M. Kerr (8222)
jasonkerr@ppktrial.com
**Price, Parkinson & Kerr**
5742 W. Harold Gatty Drive
Salt Lake City, Utah 84116
(801) 517-7088

*Attorneys for Defendants*
*Ontel Products Corp. and*
*Ashok "Chuck" Khubani*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SNAPRAYS, LLC d/b/a SNAPPOWER,<br>Plaintiff,<br>v.<br><br>ONTEL PRODUCTS CORPORATION, TELEBRANDS CORPORATION, ASHOK "CHUCK" KHUBANI, AND AJIT "AJ" KHUBANI,<br>Defendants. | Civil Action No. 2:16-CV-01198-CW<br><br>Judge Clark Waddoups<br><br>**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Defendants, Ontel Products Corp. ("Ontel") and Ashok "Chuck" Khubani ("Mr. Khubani") (collectively, "Defendants") hereby file this Answer and Defenses in response to the Second Amendment Complaint (Dkt. No. 79) filed by SnapRays, LLC's ("Plaintiff").

**RESPONSES TO INDIVIDUALLY NUMBERED PARAGRAPHS**

Defendants respond as follows to the individually numbered paragraphs in SnapRays' Second Amended Complaint:

## PARTIES

1. Plaintiff SnapRays, LLC is a Utah limited liability company doing business as SnapPower ("SnapPower"), with its principal place of business in Utah County, Utah.

**Answer: Defendants state that they lack sufficient information or knowledge to form a belief as to the allegations in Paragraph 1 and, on that basis, deny them.**

2. Defendant Ontel Products Corporation ("Ontel") is a New Jersey corporation with its principal place of business in Essex County, New Jersey.

**Answer: Defendants admit the allegations contained in Paragraph 2.**

3. Upon information and belief, defendant Ashok Khubani, who goes by the name of Chuck Khubani ("Mr. Khubani"), is the CEO of Ontel and a resident of Essex County, New Jersey.

**Answer: Defendants deny the allegations contained in Paragraph 3.**

## JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over this action pursuant to 25 U.S.C. § 1331 because a federal question exists and because, pursuant to 28 U.S.C. § 1338, this action involves claims under the Patent Act (35 U.S.C. § 271) and Lanham Act (15 U.S.C. § 1125).

**Answer: Plaintiff's allegations in Paragraph 4 are a legal conclusion that Defendants are not required to admit or deny, but to the extent any response is required, Defendants admit that the Second Amended Complaint includes an action under the Patent Act (35 U.S.C. § 271) and Lanham Act (15 U.S.C. § 1125), but deny such Claims have any merit.**

5. Upon information and belief, the Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Plaintiff SnapPower is a citizen of Utah, defendant Ontel is a New Jersey

corporation headquartered in New Jersey, and defendant Mr. Khubani is a resident of New Jersey.

**Answer: Plaintiff's allegations in Paragraph 5 are legal conclusions that Defendants are not required to admit or deny, but to the extent any response is required, Defendants state that they lack sufficient information or knowledge to form a belief as to the allegations in Paragraph 5 and, on that basis, deny them.**

6.      Upon information and belief, the Court has personal jurisdiction over the Ontel Defendants because they have advertised, sold, and/or offered for sale products to Utah customers that infringe SnapPower's patents. SnapPower is aware that the Ontel Defendants have offered their infringing products for sale in retail stores in Utah.

**Answer: Plaintiff's allegations in Paragraph 6 are legal conclusions that Defendants are not required to admit or deny, but to the extent any response is required, Defendants deny the allegations in Paragraph 6.**

7.      Upon information and belief, the Court also has personal jurisdiction over the Ontel Defendants because they have committed acts of false advertising and unfair competition in this district, including by airing television commercials of their products on national television networks, which were seen in this district.

**Answer: Plaintiff's allegations in Paragraph 7 are legal conclusions that Defendants are not required to admit or deny, but to the extent any response is required, Defendants deny the allegations in Paragraph 7.**

8.      Upon information and belief, venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 because the Ontel Defendants have committed acts of patent infringement and/or false advertising in this district and because the Ontel Defendants are subject

to the Court's personal jurisdiction.

**Answer: Plaintiff's allegations in Paragraph 8 are legal conclusions that Defendants are not required to admit or deny, but to the extent any response is required, Defendants deny that venue in this Court is proper.**

## FACTUAL ALLEGATIONS

**SnapPower's products**

9.      SnapPower is the designer, manufacturer, marketer, and seller of original and high quality products at issue in this case: the Guidelight, an electric outlet cover with built-in LED lighting and a light sensor; the SnapPower Charger, an electric outlet cover with a built-in USB charger; and the SwitchLight, a light switch cover with LED lighting similar to the Guidelight (collectively, the "Products" or "SnapPower's Products"). SnapPower's Products essentially transform electric outlets into night lights or chargers in a safe, sleek, easy-to-install manner, while leaving the electrical outlets free for use with other devices.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 9 and, on that basis, deny them.**

10.      The Products are directed at active electrical outlet covers with electrical loads that perform functions, such as LED lighting, light sensor, USB charger, speakers, and thermostats. The Products accomplish all of these functions while not impeding access to the electric outlets themselves.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 10 and, on that basis, deny them.**

**SnapPower's patents**

11.      The technology used by SnapPower's Products has been recognized by the United States Patent and Trademark Office (USPTO) through the issuance of patent nos. 8,912,442;

4

6,087,588; 6,423,900; and 9,035,180 (collectively, the "Patents-in-Suit").

**Answer: Defendants admit the existence of Patent Nos. 8,912,442; 6,087,588; 6,423,900; and 9,035,180 which are written documents that each speak for itself and Defendants deny any allegations in Paragraph 11 inconsistent therewith.**

12.     SnapPower is the assignee and sole and exclusive owner of all right, title and interest in United States Patent No. 8,912,442 ("the '442 Patent"), entitled "Active Cover Plate." The '442 Patent was duly and legally issued by the USPTO on December 16, 2014. The named inventor of the '442 Patent is Jeremy Smith. A copy of the '442 Patent is attached hereto as Exhibit A.

**Answer: Defendants admit that Exhibit A to the Second Amended Complaint appears to be a copy of the '442 Patent entitled "Active Cover Plate," which is a written document that speaks for itself. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 12 outside of the four corners of the '442 Patent and, on that basis, deny them.**

13.     SnapPower is the assignee and/or exclusive licensee of all right, title and interest in United States Patent No. 6,423,900 (the "'900 Patent"), entitled "Active Cover Plate for an Electrical Outlet." The '900 Patent was duly and legally issued by the USPTO on July 23, 2002. The named inventor of the '900 Patent is Jack Arbuthnott Soules. A copy of the '900 Patent is attached hereto as Exhibit B.

**Answer: Defendants admit that Exhibit B to the Second Amended Complaint appears to be a copy of the '900 Patent entitled "Active Cover Plate for an Electrical Outlet," which is a written document that speaks for itself. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 13 outside of the**

four corners of the '900 Patent and, on that basis, deny them.

14.     SnapPower is the assignee and/or exclusive licensee of all right, title and interest in United States Patent No. 6,087,588 (the "'588 Patent"), entitled "Active Cover Plate for an Electrical Outlet." The '588 Patent was duly and legally issued by the USPTO on July 11, 2000. The named inventor of the '588 Patent is Jack Arbuthnott Soules. A copy of the '588 Patent is attached hereto as Exhibit C.

**Answer: Defendants admit that Exhibit C to the Second Amended Complaint appears to be a copy of the '588 Patent entitled "Active Cover Plate for an Electrical Outlet," which is a written document that speaks for itself. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 14 outside of the four corners of the '588 Patent and, on that basis, deny them.**

15.     SnapPower is the assignee and the sole and exclusive owner of all right, title and interest in United States Patent No. 9,035,180 ("the '180 Patent"), entitled "Active Cover Plates." The '180 Patent was duly and legally issued by the USPTO on May 19, 2015. The named inventors of the '180 Patent are Jeremy Smith, Phil Dietz, Sean Watkins, Jan Finlinson, Martin Johnson, and Jeremy Willden. A copy of the '180 Patent is attached hereto as Exhibit D.

**Answer: Defendants admit that Exhibit D to the Second Amended Complaint appears to be a copy of the '180 Patent entitled "Active Cover Plates," which is a written document that speaks for itself. Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 15 outside of the four corners of the '180 Patent and, on that basis, deny them.**

**Ontel's advertisements**

16.     Ontel, which is a big player in what is known as the "direct-response" or

"infomercial" industry and affiliated with and/or the originators of the "As Seen On TV" brand, recently created and broadcasted nationwide one minute, thirty-second-plus television commercials that unabashedly featured and offered for sale the original SnapPower Guidelight, using actual Guidelights they purchased from SnapPower in the video footage. The commercials were also displayed on the specific websites created to sell the products.

**Answer: Defendants deny the allegations contained in Paragraph 16.**

17.     Ontel has dubbed its knock-off product the "Night Angel." Despite these changes to the names of the product, there can be no doubt that the product actually being offered for sale in its commercial and on its website was the original Guidelight. Indeed, the Ontel Defendants and/or their associates purchased Guidelights and SnapPower USB Chargers from SnapPower just months, if not weeks, before the website went live and the commercial was broadcast on

**Answer: Defendants deny the allegations contained in Paragraph 17.**

18.     The Ontel Defendants do not have the right to resell SnapPower's Products. Instead, the Ontel Defendants purchased limited numbers of SnapPower's Products for use in their marketing and presumably to create knock-off products. In other words, the Ontel Defendants were offering to sell products that are not their own, and they did not even have the advertised product to sell at the time they first advertised the product.

**Answer: Defendants deny the allegations contained in Paragraph 18.**

19.     Also troubling is that the Ontel-created website, www.buynightangel.com, featured images and photographs lifted directly from the SnapPower website. Needless to say, SnapPower never authorized the use of its website, images, or video marketing to any third party, nor has SnapPower licensed or otherwise permitted Ontel to sell its products.

**Answer: Plaintiff's allegations in Paragraph 19 are legal conclusions that Defendants are not required to admit or deny, but to the extent any response is required, Defendants deny the allegations in Paragraph 19.**

20.     In addition to misappropriating and infringing SnapPower's intellectual property rights, the Ontel Defendants falsely advertised that they had unique products to sell and deliver, when in fact it appears they had not made or sold anything. Despite providing toll-free numbers and online ordering options to consumers, orders were not fulfilled or processed and, upon information and belief, no product was shipped in response to Ontel's false advertisements.

**Answer: Defendants deny the allegations contained in Paragraph 20.**

21.     In fact, at the or around the time of Ontel's advertisements, representatives of SnapPower and other third parties attempted to purchase each of the products offered for sale on Ontel's Night Angel website, but none of the credit cards entered for the purchases were processed and no product was shipped.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 21 and, on that basis, deny them.**

22.     Ontel—with the substantial assistance, guidance, and approval of its CEO—is knowingly and willfully engaging in a practice known as "testing the market," in which it rapidly creates television commercials and websites to determine whether sufficient sales can be generated to justify manufacturing and marketing a knock-off product.

**Answer: Defendants deny the allegations contained in Paragraph 22.**

23.     SnapPower has suffered and will continue to suffer irreparable harm and lost profits due to the Ontel Defendants' conduct, including damage to its goodwill and reputation, warranting immediate preliminary injunctive relief.

**Answer: Defendants deny the allegations contained in Paragraph 23.**

**Ontel's false advertising**

24.     Ontel is a marketer and distributor of numerous consumer products, including Miracle Copper Socks, Slushy Magic, the Foot Angel, and the Slap Chop. Ontel markets its products through television commercials and a multitude of separate websites named after the individual products. Ontel sells its products via telephone, online orders, and at various retail stores, including "big box" stores like Walmart.

**Answer: Defendants admit the allegations contained in Paragraph 24.**

25.     Ontel recently began aggressively marketing the Guidelight under the name Night Angel—using images and video footage of SnapPower's Guidelight—through a one minute thirty-second-plus commercial broadcast on national television and through a newly launched website, www.buynightangel.com, where the commercial is also displayed.

**Answer: Defendants deny the allegations contained in Paragraph 25.**

26.     Through the same website, Ontel is also offering for sale a product similar to the SnapPower USB Charger, which purports to have three USB ports for charging electric devices such as cell phones, tablets, and other similar products.

**Answer: Defendants deny the allegations contained in Paragraph 26.**

27.     Ontel is also offering to sell a light switch cover that purports to have LED lighting.

**Answer: Defendants deny the allegations contained in Paragraph 27.**

28.     Upon information and belief, Ontel is actively directing traffic to www.buynightangel.com and marketing its infringing Night Angel products by purchasing Google AdWords.

**Answer: Defendants deny the allegations contained in Paragraph 28.**

29.     Upon information and belief, Mr. Khubani is a moving and active force behind Ontel's purported Night Angel products, having reviewed, approved, and materially assisted in the advertising and associated misconduct.

**Answer: Defendants deny the allegations contained in Paragraph 29.**

30.     The Ontel commercial not only falsely advertises the Guidelight for sale, but it also has been substantially similar to and incorporated many features of the Guidelight marketing video prepared by SnapPower and displayed on its website.

**Answer: Defendants deny the allegations contained in Paragraph 30.**

31.     In addition, many of the images and photos that were published on the www.buynightangel.com website are similar or identical to those on SnapPower's website, or are "photoshopped" or altered versions of SnapPower's photographs and images. The www.buynightangel.com website also utilized portions of the layout, design features, and text from the SnapPower website, including certain text that was copied verbatim and design features that were exactly the same as those on SnapPower's website.

**Answer: Defendants deny the allegations contained in Paragraph 31.**

32.     Parts of the commercial put out by Ontel also strongly resembled portions of the SnapPower video highlighting the Guidelight.

**Answer: Defendants deny the allegations contained in Paragraph 32.**

33.     Stated otherwise, the Ontel Defendants copied and created knock-off versions of SnapPower's websites and video marketing.

**Answer: Defendants deny the allegations contained in Paragraph 33.**

34.     Before creating their own alleged products and websites, and beginning roughly in September 2016, the Ontel Defendants and/or persons affiliated with them purchased numerous Guidelights and SnapPower USB Chargers from SnapPower, presumably for purposes of examining and copying the product, as well as using it in their internet and commercial advertising.

**Answer: Defendants deny the allegations contained in Paragraph 34.**

35.     For example, on August 29; September 2, 8 and 20; October 2, 11, 12, 24, and 28; and November 4, 2016, Ontel's CEO, Mr. Khubani, placed various orders for SnapPower products, including Guidelights and SnapPower USB Chargers. These orders were all shipped to an Ontel employee, Lisa Siervo, at Ontel's business address.

**Answer: Defendants deny the allegations contained in Paragraph 35.**

36.     On September 6, 2016, an individual named Daniel Bora ordered a Guidelight, which was also shipped to Ms. Siervo at Ontel's business address.

**Answer: Defendants deny the allegations contained in Paragraph 36.**

37.     On October 2, 2016, an individual named Neil Khubani purchased five Guidelights. Upon information and belief, Neil Khubani is affiliated with Ontel.

**Answer: Defendants deny the allegations contained in Paragraph 37.**

**Discovery of the Ontel commercial and resulting customer confusion**

38.     In early November 2016, SnapPower discovered that Ontel was running a commercial for the Night Angel, when an acquaintance and SnapPower customer alerted one of SnapPower's founders that he had seen a commercial for an "Angel Light" on ESPN. At the same time or shortly thereafter, SnapPower discovered the www.buynightangel.com website.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 38 and, on that basis, deny them.**

39.     That same day, a relative of another SnapPower employee saw the Night Angel commercial on television twice. He was confused as to whether the Night Angel was the SnapPower Guidelight or whether SnapPower had partnered with someone else to sell the Guidelight.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 39 and, on that basis, deny them.**

40.     The customers who contacted SnapPower about the Night Angel were confused by the advertising for the alleged product, believing the product to be the Guidelight.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 40 and, on that basis, deny them.**

41.     Since that time, a potential customer expressed confusion as to the source of SnapPower's products on SnapPower's Facebook page. The customer had attempted to purchase an outlet cover with LED lighting, but posted a complaint on the page when his purchase was unsuccessful, reporting that he was disappointed with the experience.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 41 and, on that basis, deny them.**

42.     Another customer posted a snapshot from the Night Angel website on the SnapPower Facebook page, inquiring whether the product depicted was a SnapPower product.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 42 and, on that basis, deny them.**

43.     On November 23, 2016, another individual sent an email to the SnapPower

customer service department, asking why her order had not yet arrived. She attached a copy of the order to her email. The order clearly indicates that what she purchased was a Night Angel and a Night Angel USB charger.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 43 and, on that basis, deny them.**

44.     Confusion among consumers is highly likely to continue and increase. Moreover, due to the poor customer service and inability to complete purchases on the Ontel website, SnapPower's reputation and goodwill, built up over years and through careful planning, will be tarnished and irreparably harmed if the Ontel Defendants are allowed to continue their knock-off strategy.

**Answer: Defendants deny the allegations contained in Paragraph 44.**

**Ontel's history and pattern of improper business practices**

45.     Ontel is a well-known marketer of "As Seen On TV" products.

**Answer: Defendants admit the allegations contained in Paragraph 45.**

46.     Because of their superior size, market penetration, and retail connections, the Ontel Defendants are able to quickly generate advertising and commercials to aggressively market knock-off products. If justified by their "test marketing," they are able to quickly manufacture knock-off products and get them into "big-box" stores.

**Answer: Defendants deny the allegations contained in Paragraph 46.**

47.     Upon information and belief, the Ontel Defendants specifically target potential competitors in an effort to eliminate them from the marketplace, thereby decreasing competition.

**Answer: Defendants deny the allegations contained in Paragraph 47.**

**SnapPower's products and marketing – the details**

48.     SnapPower is the developer, manufacturer, and distributor of the Guidelight, which it first began selling and shipping in May 2014. SnapPower is a Utah company with approximately twenty employees.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 48 and, on that basis, deny them.**

49.     SnapPower successfully raised substantial startup funds through a Kickstarter campaign in 2014, and its products have been favorably reviewed, awarded prizes, displayed in numerous publications, and featured on various television programs, including the Today Show.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 49 and, on that basis, deny them.**

50.     The Guidelight is an outlet cover that provides LED lighting through three separate LED bulbs located on the bottom of the cover. The Guidelight is used in place of a traditional outlet cover and functions as a "night light," providing light for comfort and safety:

**Answer: Defendants admit the allegations contained in Paragraph 50.**

51.     The LED lights are turned on and off automatically by a sensor located in the lower left quadrant of the Guidelight, as shown in the image immediately above.

**Answer: Defendants admit the allegations contained in Paragraph 51.**

52.     The Guidelight is easy to install and requires no wiring or batteries.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 52 and, on that basis, deny them.**

53.     SnapPower offers for sale two versions of the Guidelight, the "Duplex" and the "Decor." Both the Duplex and the Decor versions of the Guidelight are offered in four different colors – white, light almond, ivory, and black.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 53 and, on that basis, deny them.**

54.     In addition to the Guidelight, SnapPower offers for sale the SnapPower Charger, which is an electric outlet cover with a built-in USB port that can be used to charge phones, tablets, and similar devices, and which comes in white, light almond, and ivory:

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 54 and, on that basis, deny them.**

55.     SnapPower's SwitchLight is a light switch cover that provides LED lighting similar to the Guidelight. In addition to selling the SwitchLight product through its website, SnapPower has shown the product at trade shows and has patent applications pending as to certain aspects of the product.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 55 and, on that basis, deny them.**

56.     SnapPower developed its unique website, www.snappower.com, for purposes of marketing and selling its devices. SnapPower's website has copyright notices displayed on the bottom of each page. The website has been registered for copyright protection effective as of February 7, 2017.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 56 and, on that basis, deny them.**

57.     SnapPower's website has a number of photographs, images, and text that were prepared specifically for and belong to SnapPower.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 57 and, on that basis, deny them.**

58.     As just one an example, the homepage features a photograph of a lighted Guidelight at the bottom of a staircase in an otherwise dimly lit area. The photograph was taken in the home of SnapPower's CEO, Jesse Leishman:

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 58 and, on that basis, deny them.**

59.     SnapPower's website also includes a number of videos, one of which is a marketing video for the Guidelight.

**Answer: Defendants admit the allegations contained in Paragraph 59.**

60.     SnapPower has spent considerable resources and time developing its products and its marketing materials, including the www.snappower.com website, the videos, and print marketing.

**Answer: Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 60 and, on that basis, deny them.**

**Ontel's knock-off products and marketing**

61.     Ontel is the owner and registrant of the domain name buynightangel.com, which was created on August 5, 2016.

**Answer: Defendants admit the allegations contained in Paragraph 61.**

62.     Ontel markets, offers for sale, and purportedly sells the Night Angel products, an outlet cover with a USB charger, an outlet cover with LED lighting, and a light switch cover with LED lighting.

**Answer: Defendants admit the allegations contained in Paragraph 62 insofar as it markets, offers for sale, and sells an outlet cover with LED lighting. Defendants deny any remaining allegations contained in Paragraph 62.**

63.     The Night Angel that Ontel initially advertised was or appeared to be identical to the Guidelight, such that Ontel was literally advertising (and manufacturing a duplicate of) the Guidelight for sale, i.e., the same actual product as SnapPower's Guidelight, although in some instances Ontel doctored the photographs so that the light sensor appears on the lower right corner of the outlet cover, rather than on the lower left corner, or so that the sensor did not appear at all.

**Answer: Defendants deny the allegations contained in Paragraph 63.**

64.     Upon information and belief, the photos of the purported Night Angel products are photos of the actual Guidelight. The following are depictions of the purported Night Angel captured from the online video that appeared on the Night Angel website. In these images, Ontel did not bother to change the side on which the light sensor is located:

**Answer: Defendants deny the allegations contained in Paragraph 64.**

65.     In another example of Ontel's blatant copying, the Night Angel lights, as with the Guidelights, are offered in "Duplex" and "Decor" styles:

**Answer: Defendants deny the allegations contained in Paragraph 65.**

66.     Ontel also directly lifted images from the SnapPower website and published them on the Night Angel website. For instance, the photo taken inside the SnapPower CEO's home was doctored and reprinted as follows:

**Answer: Defendants deny the allegations contained in Paragraph 66.**

67.     The Night Angel website also incorporated an image from the SnapPower website, with the exact same text surrounding it:

**Answer: Defendants deny the allegations contained in Paragraph 67.**

68.     Another portion of the Night Angel website likewise incorporated text and layout

features nearly identical to a portion of the SnapPower website, including the exact same text and numbers in grey circles. The SnapPower website image is as follows:

**Answer: Defendants deny the allegations contained in Paragraph 68.**

69.     The similar portion of the Night Angel website was as follows:

**Answer: Defendants neither admit nor deny the allegations in Paragraph 69 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants deny any allegations contained in Paragraph 69.**

70.     Ontel also purports to sell an outlet plate with USB charger ports, similar but not identical to the SnapPower USB charger.

**Answer: Defendants deny the allegations contained in Paragraph 70.**

71.     However, the design offered by Ontel would be impossible to engineer and would not function as depicted.

**Answer: Defendants deny the allegations contained in Paragraph 71.**

72.     Accordingly, the images of the "Night Angel With USB Ports" were "photoshopped" or doctored images of SnapPower's product, and purported to offer a product for sale that literally does not exist.

**Answer: Defendants deny the allegations contained in Paragraph 72.**

73.     Ontel's website also offers a deluxe version of the Night Angel (the "Night Angel Deluxe") that purports to be 50% brighter and cover more area than the Night Angel light. The deluxe version of the Night Angel is depicted as follows:

**Answer: Defendants admit the allegations contained in Paragraph 73.**

74.     Upon information and belief, Ontel's claim that the Night Angel Deluxe is 50% brighter is literally false. The Night Angel Deluxe uses identical circuit boards and components and has identical serial numbers as the Night Angel. The Night Angel Deluxe does not emit brighter light than the Night Angel. Images comparing the Night Angel and Night Angel Deluxe are displayed below:

**Answer: Defendants deny the allegations contained in Paragraph 74.**

75.     In addition to offering the Night Angel, Night Angel Deluxe, and the Night Angel with USB ports, the Night Angel purports to offer a Night Angel "Switch Light," like SnapPower's SwitchLight. The Night Angel Switch Light is depicted as follows:

**Answer: Defendants deny the allegations contained in Paragraph 75.**

**Litigation and regulatory action against Ontel**

76.     Ontel is no stranger to litigation and regulatory action, with multiple lawsuits having been filed against it around the country, starting as far back as the 1990s.

**Answer: Defendants deny the allegations contained in Paragraph 76.**

77.     Ontel has been subject to numerous lawsuits involving the knock-off business strategy, with fact patterns similar to those presented here, involving the poaching of products and intellectual property from their original creators without authority, attribution, or compensation.

**Answer: Defendants deny the allegations contained in Paragraph 77.**

78.     It appears that Ontel views regulatory actions and litigation as a routine cost of doing business, which they simply offset by large profit margins.

**Answer: Defendants deny the allegations contained in Paragraph 78.**

79.     Indeed, Ontel appears to be able to capitalize on the delays associated with

litigation because, by the time a given case provides the injured manufacturer relief, Ontel has already profited handsomely from the knock-off strategy and their aggressive product sales and marketing, even accounting for the cost of litigation.

**Answer: Defendants deny the allegations contained in Paragraph 79.**

### FIRST CLAIM FOR RELIEF
### (FALSE ADVERTISING/FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125 OF THE LANHAM ACT AGAINST ONTEL)

80.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 80 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

81.    Ontel has made materially false and misleading misrepresentations of fact in connection with the commercial advertising of its Night Angel products, including that the products were available for sale when they were not, that the advertised products were its own, that the products operate as advertised, and that the photographs of the products published on its websites and in its video and television marketing materials were its own photographs of its own products.

**Answer: Defendants deny the allegations contained in Paragraph 81.**

82.    Ontel's marketing and advertising is literally false because it offered SnapPower's products for sale without being in possession of such products and without yet having manufactured any competing product.

**Answer: Defendants deny the allegations contained in Paragraph 82.**

83.     Upon information and belief, Ontel's marketing and advertising is also literally false because it claims that the Night Angel Deluxe is 50% brighter than the Night Angel. The Night Angel Deluxe uses identical circuit boards and components, uses identical serial numbers, and emits the same amount of light as the Night Angel.

**Answer: Defendants deny the allegations contained in Paragraph 83.**

84.     Ontel's marketing and advertising likewise conveys a materially false impression that is highly likely to confuse consumers.

**Answer: Defendants deny the allegations contained in Paragraph 84.**

85.     Ontel has made these misrepresentations in interstate commerce, including in television commercials and on the www.buynightangel.com website.

**Answer: Defendants deny the allegations contained in Paragraph 85.**

86.     Ontel's misrepresentations have caused and are likely to continue to cause both confusion as to the source and origin of the product and as to the characteristics of the product.

**Answer: Defendants deny the allegations contained in Paragraph 86.**

87.     SnapPower is suffering and is likely to continue to suffer both lost and diverted sales and harm to its goodwill, in which it has invested substantially and which it has worked over time to develop.

**Answer: Defendants deny the allegations contained in Paragraph 87.**

88.     SnapPower has suffered and will continue to suffer irreparable injury and damages as a result of the Ontel's conduct.

**Answer: Defendants deny the allegations contained in Paragraph 88.**

89.     SnapPower is entitled to recover its damages, Ontel's profits, and the costs of suit. Because of the willful nature of the Ontel's conduct and exceptional nature of this action, SnapPower is also entitled to enhanced damages and attorney's fees.

**Answer: Defendants deny the allegations contained in Paragraph 89.**

<u>**SECOND CLAIM FOR RELIEF**</u>
**(UTAH UNFAIR PRACTICES UNDER UTAH CODE § 13-5-8 AGAINST DEFENDANTS)**

90.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 90 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

91.     By, among other things, blatantly copying and advertising for sale SnapPower's products, which Ontel is not authorized or prepared to sell, Ontel has engaged in unfair methods of competition in commerce or trade.

**Answer: Defendants deny the allegations contained in Paragraph 91.**

92.     Ontel's conduct amounts to unfair and discriminatory conduct that destroys and prevents honest competition.

**Answer: Defendants deny the allegations contained in Paragraph 92.**

93.     Ontel has violated Section 13-5-8 of the Utah Unfair Practices Act by advertising for sale goods and merchandise that it was not prepared to supply.

**Answer: Defendants deny the allegations contained in Paragraph 93.**

94.     Due to his direct and indirect assistance to Ontel in violating the Utah Unfair Practices Act, Mr. Khubani is liable as a director, officer, and/or agent of Ontel under Utah Code § 13-5-6.

**Answer: Defendants deny the allegations contained in Paragraph 94.**

95.     As a result of the Ontel Defendants' conduct, SnapPower is entitled under Utah Code § 13-5-14 to immediate injunctive relief and damages, including but not limited to three times the amount of its actual damages, and court costs.

**Answer: Defendants deny the allegations contained in Paragraph 95.**

96.     SnapPower is entitled to attorney's fees and pre-and post-judgment interest as provided by law.

**Answer: Defendants deny the allegations contained in Paragraph 96.**

### THIRD CLAIM FOR RELIEF
### (UTAH UNFAIR COMPETITION UNDER UTAH COMMON LAW AGAINST ONTEL)

97.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 97 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

98.     Ontel is a competitor of SnapPower and has engaged in unfair competition under Utah common law.

**Answer: Defendants deny the allegations contained in Paragraph 98.**

99.     Ontel has intentionally engaged in unfair competition by engaging in business acts and practices in commerce that are unlawful, unfair, and fraudulent, including without

limitation by falsely representing SnapPower's Products as its own and falsely representing it had product to sell when in fact it did not.

**Answer: Defendants deny the allegations contained in Paragraph 99.**

100.    Ontel's copying and advertising for sale SnapPower's products conveys a materially false impression that is highly likely to confuse consumers and that has actually confused SnapPower's customers.

**Answer: Defendants deny the allegations contained in Paragraph 100.**

101.    As a result of Ontel's conduct, SnapPower has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. SnapPower is entitled to immediate injunctive relief.

**Answer: Defendants deny the allegations contained in Paragraph 101.**

102.    SnapPower is also entitled to recover its damages as a result of Ontel's conduct.

**Answer: Defendants deny the allegations contained in Paragraph 102.**

## FOURTH CAUSE OF ACTION
## (UNFAIR COMPETITION UNDER UTAH CODE § 13-5A-102(4) AGAINST ONTEL)

103.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 103 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

104.    Ontel is a competitor of SnapPower and has engaged in unfair competition under Section 13-5a-102(4) of the Utah Unfair Competition Act.

**Answer: Defendants deny the allegations contained in Paragraph 104.**

105.    Ontel engaged in unfair competition by intentionally infringing the Patents-in-Suit.

**Answer: Defendants deny the allegations contained in Paragraph 105.**

106.    Ontel's acts and practices have led to a material diminution in value of SnapPower's Patents-in-Suit.

**Answer: Defendants deny the allegations contained in Paragraph 106.**

107.    As a direct and proximate result of Ontel's conduct, SnapPower is entitled to recover its actual damages in an amount to be proven at trial.

**Answer: Defendants deny the allegations contained in Paragraph 107.**

108.    SnapPower is also entitled to its costs and attorneys' fees, and pre- and post-judgment interest, as provided by law.

**Answer: Defendants deny the allegations contained in Paragraph 108.**

109.    SnapPower is entitled to punitive damages under Utah Code § 13-5a-103(1)(b)(iii) as a result of Ontel's intentional, deliberate, and malicious conduct.

**Answer: Defendants deny the allegations contained in Paragraph 109.**

## FIFTH CAUSE OF ACTION
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 8,912,442 AGAINST ONTEL)**

110.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 110 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

111.   Ontel is directly infringing at least Claims 1, 2, 3, 4, 5, 11, 12, 13, 14, and 15 of the '442 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

**Answer: Defendants deny the allegations contained in Paragraph 111.**

112.   At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '442 Patent.

**Answer: Plaintiff's allegations in Paragraph 112 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 112.**

113.   Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

**Answer: Defendants deny the allegations contained in Paragraph 113.**

114.   Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '442 Patent and SnapPower's rights therein.

**Answer: Defendants deny the allegations contained in Paragraph 114.**

115.   Ontel's infringement of the '442 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law. SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

**Answer: Defendants deny the allegations contained in Paragraph 115.**

116.     As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

**Answer: Defendants deny the allegations contained in Paragraph 116.**

117.     Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

**Answer: Defendants deny the allegations contained in Paragraph 117.**

<u>**SIXTH CAUSE OF ACTION**</u>
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 6,423,900 AGAINST ONTEL)**

118.     SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 118 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

119.     Ontel is directly infringing at least Claim 16 of the '900 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

**Answer: Defendants deny the allegations contained in Paragraph 119.**

120.     At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '900 Patent.

**Answer: Plaintiff's allegations in Paragraph 120 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 120.**

121.    Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

**Answer: Defendants deny the allegations contained in Paragraph 121.**

122.    Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '900 Patent and SnapPower's rights therein.

**Answer: Defendants deny the allegations contained in Paragraph 122.**

123.    Ontel's infringement of the '900 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law. SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

**Answer: Defendants deny the allegations contained in Paragraph 123.**

124.    As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

**Answer: Defendants deny the allegations contained in Paragraph 124.**

125.    Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

**Answer: Defendants deny the allegations contained in Paragraph 125.**

<u>**SEVENTH CAUSE OF ACTION**</u>
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 6,087,588 AGAINST ONTEL)**

126.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 126 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

127.    Ontel is directly infringing at least Claims 1, 2, 7, and 8 of the '588 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

**Answer: Defendants deny the allegations contained in Paragraph 127.**

128.    At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '588 Patent.

**Answer: Plaintiff's allegations in Paragraph 128 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 128.**

129.    Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

**Answer: Defendants deny the allegations contained in Paragraph 129.**

130.    Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '588 Patent and SnapPower's rights therein.

**Answer: Defendants deny the allegations contained in Paragraph 130.**

131.    Ontel's infringement of the '588 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate

remedy at law. SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

**Answer: Defendants deny the allegations contained in Paragraph 131.**

132.    As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

**Answer: Defendants deny the allegations contained in Paragraph 132.**

133.    Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

**Answer: Defendants deny the allegations contained in Paragraph 133.**

**EIGHTH CAUSE OF ACTION**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 9,035,180 AGAINST ONTEL)**

134.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 134 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

135.    Ontel is directly infringing at least Claims 1, 2, 3, 5, 6, 7, 11, 12, 13, 14, 15, and 16 of the '180 Patent, literally or by equivalents, pursuant to 35 U.S.C. § 271 in the United States, including in this judicial district, by making, using, offering to sell, and selling the Night Angel products.

**Answer: Defendants deny the allegations contained in Paragraph 135.**

136.    At no time has SnapPower granted Ontel any authorization, license, or permission to practice the '180 Patent.

**Answer: Plaintiff's allegations in Paragraph 136 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 136.**

137.   Ontel's patent infringement has allowed it to unfairly reap a substantial commercial and competitive advantage and savings in, among other things, research, development, and operational time and cost.

**Answer: Defendants deny the allegations contained in Paragraph 137.**

138.   Upon information and belief, Ontel's infringement has been willful and with full knowledge of the '180 Patent and SnapPower's rights therein.

**Answer: Defendants deny the allegations contained in Paragraph 138.**

139.   Ontel's infringement of the '180 Patent has caused and, unless restrained and enjoined, will continue to cause irreparable harm to SnapPower that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law. SnapPower is entitled to preliminary and permanent injunctive relief against further infringement.

**Answer: Defendants deny the allegations contained in Paragraph 139.**

140.   As a direct and proximate result of Ontel's patent infringement, SnapPower is entitled to recover actual damages in an amount to be proven at trial.

**Answer: Defendants deny the allegations contained in Paragraph 140.**

141.   Ontel's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SnapPower to its attorneys' fees and costs incurred in bringing this action.

**Answer: Plaintiff's allegations in Paragraph 141 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 141.**

## NINTH CAUSE OF ACTION
### (INJUNCTION – DEFENDANTS)

142.    SnapPower hereby incorporates and realleges the preceding paragraphs as if fully set forth herein.

**Answer: Defendants neither admit nor deny the allegations in Paragraph 142 because there is no allegation of fact directed at any party and thus no response is required. To the extent that any response is required, Defendants incorporate and reallege the preceding paragraphs as if fully set forth herein.**

143.    The Ontel Defendants have violated SnapPower's rights and have otherwise acted in an unlawful manner, as set forth in the preceding causes of action. SnapPower has a substantial likelihood of prevailing on the merits of these claims.

**Answer: Defendants deny the allegations contained in Paragraph 143.**

144.    Unless an injunction issues, SnapPower will suffer irreparable harm, including but not limited to permanent injury to its goodwill, ability to do business, and/or loss of business in an amount difficult or impossible to quantify.

**Answer: Defendants deny the allegations contained in Paragraph 144.**

145.    An injunction would not be adverse to the public interest.

**Answer: Defendants deny the allegations contained in Paragraph 145.**

146.    The threatened injury to SnapPower outweighs whatever damage an injunction could cause to the Ontel Defendants.

**Answer: Defendants deny the allegations contained in Paragraph 146.**

147.    There is a substantial likelihood that SnapPower will prevail on the merits of the claims for which injunctive relief is sought, or there are serious issues on the merits which should be the subject of further litigation.

**Answer: Defendants deny the allegations contained in Paragraph 147.**

148.    Therefore, under Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116(a), SnapPower is entitled to a temporary restraining order and preliminary injunction that includes, at a minimum, the following relief:

(a)    That Ontel be ordered immediately to discontinue infringing, contributorily infringing, or inducing infringement of any Claims of the Patents-in-Suit, literally or by equivalents;

(b)    That the Ontel Defendants be ordered immediately to discontinue making any and all false and misleading statements in connection with their advertising and marketing;

(c)    That the Ontel Defendants be ordered to cease offering for sale any product they do not have, including any and all products offered or sold by SnapPower;

(d)    That the Ontel Defendants immediately cease and desist from marketing and advertising for sale the Night Angel, including without limitation via television, through the internet, or in print;

(e)    That the www.buynightangel.com website be immediately taken down and discontinued;

(f)    That the Ontel Defendants are disgorged of and precluded from utilizing the fraudulently obtained consumer information and market research; and

(g)    Any additional relief warranted at law or necessary to protect

SnapPower's rights, to be determined by the facts and circumstances at the time of entry of the order.

**Answer: Plaintiff's allegations in Paragraph 148 are legal conclusions that Defendants are not required to admit or deny, but to the extent that any response is required, Defendants deny the allegations contained in Paragraph 148.**

## PRAYER FOR RELIEF

WHEREFORE, SnapPower respectfully requests the Court enter judgment against the Ontel Defendants as follows:

**On the First, Second, and Third Causes of Action:**

1.     For an order enjoining the Ontel Defendants, including all of their officers, agents, servants, employees, contractors, suppliers, and attorneys, and all other persons who are in active concert or participation with them or who receive actual notice of the order by personal service or otherwise, from engaging in false or misleading advertising with respect to SnapPower's products and related services, and/or violation the Lanham Act, unfair competition, or unfair practices, including, but not limited to, removal of all false or misleading advertisements;

2.     For an order requiring the Ontel Defendants to correct any erroneous impressions they have created in the minds of SnapPower's clients and the consuming public concerning the origin and characteristics of the Ontel Defendants' Products, including, but not limited to, the placement of corrective advertising and providing written notice to the public;

3.     Entry of judgment holding that the Ontel Defendants violated 15 U.S.C. § 1125(a) and unfair competition under Utah common law by unfairly competing against SnapPower by using false, deceptive, or misleading advertisements;

4.      For an award of damages that SnapPower sustained in consequence of the Ontel Defendants advertisement and conduct;

5.      For an award of the gains, profits, and advantages that the Ontel Defendants have obtained as a result of their actions in violation of 15 U.S.C. § 1125(a);

6.      Entry of judgment holding that the Ontel Defendants' actions and conduct were undertaken willfully and with the intention to cause confusion, mistake, or deception, making this an exceptional case, and awarding SnapPower enhanced damages and reasonable attorneys' fees; and

7.      For an order directing the Ontel Defendants to remove and destroy all misleading and deceptive materials pursuant to 15 U.S.C. § 1118.

**Answer: The remainder of Plaintiff's Second Amended Complaint, Paragraphs 1 through 7, merely recites a prayer for relief for the First, Second, and Third Causes of Action to which no response is required. To the extent any response is required Defendants deny that Plaintiff is entitled to any remedy for relief.**

**On the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action:**

1.      Declaring that Ontel has infringed one or more Patents-in-Suit;

2.      Preliminarily and permanently enjoining Ontel, including all of its officers, agents, servants, employees, contractors, suppliers, and attorneys, and all other persons who are in active concert or participation with it or who receive actual notice of the order by personal service or otherwise, from directly infringing, contributorily infringing, or inducing infringement of any Claims of the Patents-in-Suit, literally or by equivalents;

3.      Entry of judgment in favor of SnapPower and against Ontel awarding SnapPower its damages for patent infringement pursuant to 35 U.S.C. § 284 in an amount to be determined

at trial, but in no event less than a reasonable royalty for infringement of the Patents-in-Suit, in addition to pre-judgment interest, post-judgment interest, and SnapPower's costs in bringing this action;

4.      For an award of treble damages pursuant to 35 U.S.C. § 284 due to Ontel's deliberate and willful infringement of the Patents-in-Suit;

5.      For an award of SnapPower's reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285; and 6. For damages sufficient to compensate SnapPower for Ontel's wrongful conduct, including for SnapPower's lost profits, lost sales, Ontel's sales, and/or lost license fees and royalties.

**Answer: The remainder of Plaintiff's Second Amended Complaint, Paragraphs 1 through 5, merely recites a prayer for relief for the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action to which no response is required. To the extent any response is required Defendants deny that Plaintiff is entitled to any remedy for relief.**

## DEMAND FOR JURY TRIAL

SnapPower demands a trial by jury on all matters herein so triable in accordance with Federal Rule of Civil Procedure 38(b).

**Answer: Defendants acknowledge Plaintiff's demand and state that they do not dispute Plaintiff's right to a trial by jury on any issue to triable as of right.**


**RESIDUAL DENIAL: Defendants deny as untrue each and every allegation of the Second Amended Complaint that is not specifically admitted above.**

## AFFIRMATIVE DEFENSES

149.    Defendants assert the following additional defenses to the Second Amended Complaint but do not assume the burden of proof on any such defenses except as required by applicable law.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

150.    Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE – STATUTE OF LIMITATIONS

151.    Plaintiff's claims are barred in whole or in party by the applicable statutes of limitations.

## THIRD DEFENSE - STANDING

152.    Plaintiff lacks standing to assert the claims contained in the Second Amended Complaint.

## FOURTH DEFENSE – LICENSE OR OTHERWISE AUTHORIZED USE

153.    Plaintiff's claims are barred to the extent the allegedly unlawful or infringing use was licensed or otherwise authorized by persons or entities with the right to license or authorize such use.

## FIFTH DEFENSE - PREEMPTION

154.    Federal law preempts some or all of Plaintiff's claims asserted under state law.

## SIXTH DEFENSE - ESTOPPEL

155.    Plaintiff's claims are barred by the doctrine of estoppel.

## SEVENTH DEFENSE – UNFAIR PRACTICES UNDER THE UTAH CODE

156.    Defendants have not engaged in unfair practices or methods of competition as

defined by Utah Code § 13-5-8.

### EIGHTH DEFENSE - WAIVER

157.    Plaintiff's claims are barred by the doctrine of waiver.

### NINTH DEFENSE – UNCLEAN HANDS

158.    Plaintiff's claims are barred or abated substantially by the doctrine of unclean hands.

### TENTH DEFENSE – FAILURE TO MITIGATE

159.    Without any admission by Defendants that Plaintiff suffered any injury in any way, to the extent that Plaintiff did suffer such injury, their claims are barred in whole or in part because they failed to use reasonable means to prevent the alleged damage and failed to use reasonable means to mitigate their damages.

### ELEVENTH DEFENSE – NO DAMAGES

160.    Plaintiff's claims fail in whole or in part to the extent they have suffered no damages.

### TWELFTH DEFENSE – NO PATENT INFRINGEMENT

161.    Defendants have not infringed, and do not infringe, either literally or under the doctrine of equivalents, any valid, enforceable, asserted claims of the patent nos. 8,912,442; 6,087,588; 6,423,900; and 9,035,180, whether directly, indirectly, individually, jointly, contributorily, and/or by inducement.

### THIRTEENTH DEFENSE – PATENT INVALIDITY

162.    Each asserted claim of the patent nos. 8,912,442; 6,087,588; 6,423,900; and 9,035,180 is invalid for failure to comply with one or more of the requirements of United States

Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and 171, and the rules, regulations, and laws pertaining thereto.

## FOURTEENTH DEFENSE – ADEQUATE REMEDY AT LAW

163.    Plaintiff is not entitled to injunctive relief as it has, at a minimum, no irreparable injury and an adequate remedy at law for the alleged infringement.

## FIFTEENTH DEFENSE – GOOD FAITH § 285

164.    Defendants have engaged in all relevant activities in good faith, thereby precluding Plaintiff from recovering its reasonable attorney's fees and/or costs under 35 U.S.C. § 285.

## SIXTEENTH DEFENSE – GOOD FAITH § 284

165.    Defendants have engaged in all relevant activities in good faith, thereby precluding Plaintiff from recovering increased damages under 35 U.S.C. § 284.

## SEVENTEENTH DEFENSE – NOT WILLFUL

166.    Should Defendants be found to infringe any valid, enforceable claim of patent nos. 8,912,442; 6,087,588; 6,423,900; and 9,035,180, such infringement was not and is not willful.

## EIGHTEENTH DEFENSE – UNFAIR COMPETITION / FALSE DESIGNATION OF ORIGIN

167.    Defendants have not engaged in any unfair competition or false designation of origin.

## NINETEENTH DEFENSE – TRADE DRESS DILUTION

168.    Defendants have not diluted any valid, enforceable trade dress of Plaintiff.

## TWENTIETH DEFENSE - MISAPPROPRIATION

169.    Defendants have not engaged in any acts of misappropriation against Plaintiff.

## TWENTY-FIRST DEFENSE – UNFAIR PRACTICES UNDER THE UTAH COMMON LAW

170.    Defendants have not engaged in unfair practices as established by the common law of Utah.

## TWENTY-SECOND DEFENSE – UNFAIR COMPETITION UNDER THE UTAH COMMON LAW

171.    Defendants have not engaged in unfair competition as established by the common law of Utah.

## TWENTY-THIRD DEFENSE – UNFAIR COMPETITION UNDER THE UTAH CODE

172.    Defendants have not engaged in unfair competition as defined by the Utah Code § 13-5A-102(4).

## TWENTY-FORTH DEFENSE – DECEPTIVE TRADE PRACTICES

173.    Defendants have not engaged in deceptive or misleading trade practices.

## TWENTY-FIFTH DEFENSE – IMPROPER VENUE

174.    Venue is improper in the District of Utah as Defendants do not reside in the state of Utah nor do the Defendants have a regular and established place of business in Utah.

## TWENTY-SIXTH DEFENSE – FAILURE TO MARK

175.    SnapRays' pre-lawsuit claims for damages as to the asserted patents are barred, in whole or in part, for failure to comply with 35 U.S.C. § 287.

## TWENTY-SEVENTH DEFENSE – RESERVATION OF RIGHTS TO ADD DEFENSES

176.    Plaintiff reserves the right to assert additional defenses upon discovery of further information concerning Plaintiff's claims.

## DEFENDANTS' COUNTERCLAIMS

1.      Counterclaim-Plaintiffs Ontel Products Corporation ("Ontel") and Ashok "Chuck" Khubani ("Mr. Khubani") (collectively, "Counterclaim-Plaintiffs") for their counterclaims against Counterclaim-Defendant SnapRays, LLC's ("SnapRays") allege as follows:

### PARTIES

2.      Ontel is a New Jersey corporation with its principal place of business in Essex County, New Jersey.

3.      Mr. Khubani is an individual and a resident of Palm Beach County, Florida.

4.      In its Complaint, SnapRays alleges that it is a Utah limited liability company doing business as SnapPower ("SnapPower"), with its principal place of business in Utah County, Utah.

### JURISDICTION AND VENUE

5.      These are counterclaims for Declaratory Relief for which this Court has jurisdiction under Title 35 of the United States Code, as well as under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202.

6.      This Court has personal jurisdiction over SnapRays by virtue of the Complaint SnapRays filed in this Court, SnapRays' significant contacts with this forum, SnapRays' complaint alleges its principle place of business is in the state of Utah, and the fact that SnapRays is organized under the laws of the state of Utah.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

## COUNTERCLAIM I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY OF U.S. PATENT NO. 8,912,442

8.      Counterclaim-Plaintiffs incorporate by reference the preceding averments set forth in Counterclaim Paragraphs 1–7.

9.      By the filing of its Complaint, SnapRays has purported to assert claims against Counterclaim-Plaintiffs for the alleged infringement of the '442 Patent.

10.     Counterclaim-Plaintiffs deny SnapRays' infringement allegations.

11.     The claims of the '442 Patent are invalid or unenforceable for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, 133, and 200 *et seq*.

12.     Accordingly, there exists a substantial and continuing justiciable controversy between SnapRays and Counterclaim-Plaintiffs as to the infringement, validity, and enforceability of the '442 Patent.

13.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim-Plaintiffs are entitled to a judgment finding that the '442 Patent is not infringed by any of Counterclaim-Plaintiffs' products, services, or processes and that every claim of the '442 Patent is invalid and unenforceable.

## COUNTERCLAIM II: DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY OF U.S. PATENT NO. 6,087,588

14.     Counterclaim-Plaintiffs incorporate by reference the preceding averments set forth in Counterclaim Paragraphs 1–13.

15.     By the filing of its Complaint, SnapRays has purported to assert claims against Counterclaim-Plaintiffs for the alleged infringement of the '588 Patent.

16.     Counterclaim-Plaintiffs deny SnapRays' infringement allegations.

17.     The claims of the '588 Patent are invalid or unenforceable for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, 133, and 200 *et seq.*

18.     Accordingly, there exists a substantial and continuing justiciable controversy between SnapRays and Counterclaim-Plaintiffs as to the infringement, validity, and enforceability of the '588 Patent.

19.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201*, et seq.*, Counterclaim-Plaintiffs are entitled to a judgment finding that the '442 Patent is not infringed by any of Counterclaim-Plaintiffs' products, services, or processes and that every claim of the '588 Patent is invalid and unenforceable.

### COUNTERCLAIM III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY OF U.S. PATENT NO. 6,423,900

20.     Counterclaim-Plaintiffs incorporate by reference the preceding averments set forth in Counterclaim Paragraphs 1–19.

21.     By the filing of its Complaint, SnapRays has purported to assert claims against Counterclaim-Plaintiffs for the alleged infringement of the '900 Patent.

22. Counterclaim-Plaintiffs deny SnapRays' infringement allegations.

23.     The claims of the '900 Patent are invalid or unenforceable for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, 133, and 200 *et seq.*

24.     Accordingly, there exists a substantial and continuing justiciable controversy between SnapRays and Counterclaim-Plaintiffs as to the infringement, validity, and enforceability of the '900 Patent.

25.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim-Plaintiffs are entitled to a judgment finding that the '442 Patent is not infringed by any of Counterclaim-Plaintiffs' products, services, or processes and that every claim of the '900 Patent is invalid and unenforceable.

## COUNTERCLAIM IV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY OF U.S. PATENT NO. 9,035,180

26.     Counterclaim-Plaintiffs incorporate by reference the preceding averments set forth in Counterclaim Paragraphs 1–25.

27.     By the filing of its Complaint, SnapRays has purported to assert claims against Counterclaim-Plaintiffs for the alleged infringement of the '180 Patent.

28.     Counterclaim-Plaintiffs deny SnapRays' infringement allegations.

29.     The claims of the '180 Patent are invalid or unenforceable for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, 133, and 200 *et seq*.

30.     Accordingly, there exists a substantial and continuing justiciable controversy between SnapRays and Counterclaim-Plaintiffs as to the infringement, validity, and enforceability of the '180 Patent.

31.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Counterclaim-Plaintiffs are entitled to a judgment finding that the '442 Patent is not infringed by any of Counterclaim-Plaintiffs' products, services, or processes and that every claim of the '180 Patent is invalid and unenforceable.

## PRAYER FOR RELIEF

32.     WHEREFORE, Counterclaim-Plaintiffs respectfully pray for relief as follows:

A. For a Declaratory Judgment that the '442, '588, '900, and '180 Patents, and each and every asserted claim thereof, are invalid, unenforceable, and not infringed;

B. That SnapRays' Counts V-VIII be dismissed with prejudice;

C. That pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable authority, SnapRays be ordered to pay all of Counterclaim-Plaintiffs' reasonable attorneys' fees incurred in defending against SnapRays' Counts V-VIII;

D. Counterclaim-Plaintiffs be awarded such other relief as the Court deems just and equitable.


DATED this 5th day of June, 2017.

By /s/ John S. Artz
    John S. Artz
    Franklin M. Smith
    **DICKINSON WRIGHT PLLC**
    2600 W. Big Beaver Rd., Suite 300
    Troy, Michigan 48084
    Telephone: (248) 433-7200

    Jason M. Kerr (8222)
    jasonkerr@ppktrial.com
    Price, Parkinson & Kerr
    5742 W. Harold Gatty Drive
    Salt Lake City, Utah 84116
    (801) 517-7088

    *Attorneys for Defendants*
    *Ontel Products Corp. and*
    *Ashok "Chuck" Khubani*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 5, 2017 I caused a true and correct copy of the foregoing

document to be filed with the Clerk of Court and served on all counsel of record via CM/ECF.


<u>/s/ Franklin M. Smith</u>
  Franklin M. Smith

BLOOMFIELD 64944-133 1843025v3

46